PER CURIAM.
Jerry E. Mackey petitions for a writ of certiorari, seeking review of an order of the Circuit Court for Bay County which affirmed on appeal Mackey’s conviction and sentence for driving under the influence of alcohol.[1] We deny relief.
During the selection of a jury for Mack-ey’s trial, counsel for defendant asked prospective jurors if they knew or had met Jim Appleman, State Attorney for the Fourteenth Judicial Circuit. Several responded that they had met Appleman that same morning during juror orientation. Defense counsel moved to strike the entire venire and for a mistrial. Subsequently a hearing was held in chambers and Appleman testified that he routinely appears at such orientations each Monday morning, unless he is out of town or is personally handling a trial that would be heard by the prospective jurors. Also in attendance is the clerk of the circuit court or one of his deputies, who introduces Appleman and identifies him as the State Attorney. On occasion local defense counsel appear and are introduced to the venire. Mr. Quintana, counsel for petitioner, stated that he and his client were in another part of the courthouse at the time and were unaware of the juror orientation. When asked what he said to the jury, Appleman testified as follows:
After seven years I can probably go through it verbatim, Ed. Mr. Bazzel [circuit court clerk] takes and swears the jurors. The first thing I say to them is that we’re required by law to ascertain whether or not you are qualified to serve as a juror here in Bay County and the questions I’m about to ask you are not to pry into your personal affairs or embarrass you in any way. Later you’ll see in the slide presentation what’s known as the voir dire examination of the jury. This is where attorneys for the state and for the defendant will ask you questions about the specific case that they’re going to try. Again, be reminded that they’re not trying to pry into your personal affairs or embarrass you in any way. *905 Their objective is to obtain a jury which is both fair and impartial to the State and the defendant.
First question I ask them is if they were summoned by their proper name. No one this morning indicated that they had not been summoned by their proper name. Then I ask them if they’re over the age of 18 years, if they’re qualified to vote in the next general election here in Bay County, if they’re a resident of Bay County and the State of Florida, if they serve in the capacity as the governor, member of the cabinet, a sheriff or deputy sheriff, municipal police officer, the clerk of the court or judge of this court; if they’ve ever been convicted of a felony and not had their civil rights restored by a court of law; whether or not they’ve ever been declared mentally incompetent and not had their competency restored by a court of law.
Then I indicate to them that those are the general qualifications for jury service and that there are certain exemptions that they have that they can excuse themselves: If they’re 70 years of age or older, if they have a disabled relative who lives in their home and they’re required to attend to that relative, if they have served on jury service within the past two years, if they’re an expectant mother, and whether or not they have children six years of age or younger and are not employed outside the home, and they would like to be excused for that particular reason and use that exemption.
That’s the general basis of everything I go over. Then I explain to them that the attorneys are not allowed to discuss with the jurors anything, since they are potential jurors, that I know many of them, many of them will know the defense attorneys. If there are defense attorneys present I always introduce them in the courtroom. And basically explain to the jury that the attorneys for both the state and the defendant are under an obligation to have no discussions whatsoever with potential jurors, thank them for their jury service, and leave.
After hearing argument, the motions were denied. The trial court, however, offered defense counsel the opportunity to further question prospective jurors to attempt to establish any prejudice that the communication may have made upon the particular jurors selected. This offer was not accepted.
Thereafter the jury heard the evidence and Mackey was convicted and appropriately sentenced. On appeal to the circuit court, Mackey argued that Appleman’s appearance before the prospective jurors violated his right to an impartial jury and his right to be present during any questioning of jurors. Further, he contended that the action was a violation of Rule 4-3.5(d)(l) of the Rules Regulating the Florida Bar, which prohibits counsel from communicating with prospective jurors prior to trial. The circuit court found that Appleman’s communication with the prospective jurors was not improper and therefore affirmed the conviction.
We agree with the circuit court that Mackey’s appeal failed to demonstrate reversible error. First, it is well-settled that, at least for purposes of considering a motion for disqualification, a state attorney’s office is not comparable to a law firm. State v. Clausell, 474 So.2d 1189 (Fla.1985). The appearance of Appleman before the venire was not equivalent, therefore, to an appearance by his assistant who was to serve as prosecutor at trial. Moreover, the general qualification of jurors is not a critical stage of the proceeding which requires the defendant’s presence, Robinson v. State, 520 So.2d 1 (Fla.1988). In view of the heavy burden on petitioner, Combs v. State, 436 So.2d 93 (Fla.1983), we find he has not shown entitlement to relief on the record and deny the petition for writ of certiorari. However, even though we deny relief in the case, we write further to express to the bench and bar our concern with the practice of assigning or permitting the state attorney to advise prospective veniremen as to the legal requirements relating to jury service and the statutory entitlements to request exemption or excuse from such duty. In these days of *906 heightened judicial and public scrutiny at each step in the criminal justice process, such a procedure seems to us to invite challenges such as the one at hand. We cannot say that, in the future, questions of substance will not arise concerning state attorney qualification of jurors which may dictate a result different than that reached here.
It should always be remembered not only that criminal proceedings must be fair, in fact, they must appear to be fair. Using the state attorney as venire advisor, given his role as chief prosecutor, might well be viewed as a factor undermining this all-important appearance of fairness. An imagined advantage on one side or the other in a criminal proceeding can be as destructive of the integrity of the process as can a real advantage.
SHIVERS, C.J., and THOMPSON and MINER, JJ., concur.

. The petitioner’s trial was presided over by County Judge Judy M. Pittman. The order affirming the conviction was rendered by Circuit Judge W. Fred Turner.