ROTHENBERG, J.
 

 Mario Lot (“the defendant”) appeals his conviction and sentence for grand theft. We affirm.
 

 The victim, Cole Mayer (“Cole”), is the beneficiary of a substantial trust established by his biological father, who was a part owner of Sloppy Joe’s Bar/Restaurant in Key West, Florida. Cole’s biological father died when Cole was two years old. When Cole was approximately six years old, the defendant and Cole’s mother became romantically involved, and the defendant helped Cole’s mother with household finances and bill-paying. Cole and the defendant enjoyed a father-son relationship.
 

 Upon his eighteenth birthday (late in 2006), Cole sought and obtained the defendant’s advice on obtaining access to the trust. In January 2007, the defendant asked Cole for a $5,000 loan to pay a gambling debt the defendant had incurred. Cole wrote the defendant a check, and specifically noted on the memo line, “Loan Dad.” Cole testified that he told the defendant that this was a one-time thing, and that he would never again finance the defendant’s gambling. Although Cole was aware that the defendant was a gambler, he testified that when he loaned the defendant $5,000, he was unaware the defendant had a gambling problem.
 

 Cole subsequently provided the defendant with a number of signed, blank checks, expecting the defendant to use the checks to pay some of Cole’s attorney and home improvement expenses. However, the defendant used the blank.checks to repay additional gambling debts, totaling over $100,000. Thereafter, Cole, his mother, and a family friend held an intervention, where they confronted the defendant with his gambling, and offered to assist him with getting help. The defendant admitted to having a gambling problem, vowed to repay Cole in full, and attempted to settle the matter without the authorities getting involved, however, Cole ultimately reported the theft to the police.
 

 The defendant hired Joseph Spataro, who represented the defendant as defense counsel for five months, until Spataro accepted a position with the State Attorney’s Office in Key West. Before trial, the defendant moved to disqualify the entire Monroe County State Attorney’s Office. At the hearing, Spataro testified that after terminating his representation of the defendant and becoming employed by the Monroe County State Attorney’s Office, he was fully screened from the defendant’s prosecution, and he did not discuss the case with any of his colleagues or supervisors. The trial court denied the defendant’s motion to disqualify, and the case proceeded to trial.
 

 During defense counsel’s cross-examination of Cole, the State objected to defense counsel’s attempt to highlight Cole’s gambling habits, contending that the questions were irrelevant to the true issue in the case — whether Cole had consented to the defendant’s use of the blank checks to finance his gambling. Defense counsel responded that he wanted to delve into Cole’s gambling to refute his testimony that he was unaware that the defendant had a gambling problem. The trial court sustained the objection, finding that the testimony sought was irrelevant evidence seeking only to establish bad character.
 

 
 *1123
 
 At the conclusion of the trial, on rebuttal closing argument, the prosecutor explained to the jury that people with addictions involving drugs, alcohol, or gambling, often do “evil things” in furtherance of their addiction — even to those they love — and those acts are not always performed in a sophisticated manner. Defense counsel objected and moved for a mistrial, arguing that the State had impermissibly suggested that the defendant was an alcoholic or a drug addict. The trial court denied the motion, the jury found the defendant guilty of grand theft, and this appeal followed.
 

 The defendant contends that reversal is necessary because: (1) the trial court im-permissibly limited the cross-examination of Cole; (2) the trial court erred in denying the defendant’s motion for mistrial based upon the prosecutor’s statements during rebuttal closing argument; and (3) the entire Monroe County State Attorney’s Office should have been disqualified.
 

 The Cross-Examination of Cole
 

 The trial court limited defense counsel’s cross-examination of Cole by sustaining the State’s objection to a line of questioning regarding Cole’s gambling with his friends, where the defendant did not participate. The trial court found that these questions were irrelevant, and tended only to establish Cole’s bad character. On appeal, we review the trial court’s limitation of defense counsel’s cross-examination for an abuse of discretion.
 
 Moore v. State,
 
 701 So.2d 545, 549 (Fla.1997) (“Limitation of cross-examination is subject to an abuse of discretion standard.”);
 
 accord Diaz v. State,
 
 747 So.2d 1021, 1023 (Fla. 3d DCA 1999).
 

 The defendant argues that the trial court abused its discretion by limiting his cross-examination of Cole and not allowing him to develop his main defense — that Cole was aware of the defendant’s gambling debts, that he willingly loaned the money to the defendant, and that he was aware that the money was going to be used to pay off the defendant’s gambling debts. We do not find that the limitation of defense counsel’s cross-examination was ' error. The record conclusively establishes that the defendant had a full opportunity to present testimony related to his defense, including testimony that Cole played poker with the defendant, and Cole was aware that the defendant gambled. The trial court’s limitation of defense counsel’s cross-examination of Cole pertained only to Cole’s own gambling habits in the absence of the defendant, which we agree was irrelevant and was properly excluded.
 

 The State’s Rebuttal Closing Argument
 

 During its rebuttal closing argument, the prosecutor made the following comments to the jury:
 

 [T]he defense is somehow asking you to speculate that, oh, why would the defendant steal from this young man who he loves so much. Well, it’s an unfortunate thing, but addiction is evil. It’s an evil thing.
 

 People who are addicted to drugs steal from their families. People who are addicted and who are alcoholics do some pretty evil things, too. People, they drive drunk, things that you wouldn’t expect them to do in order to get their alcohol. People who need their drugs do lots of things in order to get their drugs. Gambling is just as bad. This defendant had a gambling problem and was in such hot water with his bookies that he had to go and steal money from somebody. Where’s he going to get the money from? Well, the deepest well that he knows that he’s got some power over belongs to his stepson. Where else is he going to get the mon
 
 *1124
 
 ey? Is it smart? No.... It doesn’t mean he didn’t do it.
 

 The trial court denied the defendant’s contemporaneous objection and subsequent motion for a mistrial, finding that the testimony did reflect that the defendant had a gambling problem, which could be fairly characterized as an addiction, and that to suggest that people with addictions are often driven to out-of-character acts is “within the ambit of logic and common sense.”
 

 On appeal, the defendant argues that these comments prejudicially influenced the jury, and the trial court’s denial of his motion for mistrial amounts to reversible error. We disagree, as the defendant has failed to demonstrate any abuse of discretion.
 
 Goodrich v. State,
 
 854 So.2d 663, 664 (Fla. 3d DCA 2003) (“The control of comments made to the jury by counsel is within the discretion of the trial court, and an appellate court will not interfere unless a party demonstrates an abuse of discretion.”).
 

 In this ease, the record is replete with references made by both parties to the defendant’s gambling problem. The testimony, admitted without defense objection, revealed that the defendant had been referred to Gambler’s Anonymous, and was otherwise going to seek help, and that Cole, his mother, and a friend held an “intervention” for the defendant regarding his gambling. It was no great stretch of logic for the prosecutor to suggest that, like people addicted to drugs and alcohol, those with gambling addictions often act in inexplicable fashions, and sometimes, to the detriment of those they love.
 
 See id.
 
 (noting that attorneys have great latitude in presenting closing arguments, provided that they adhere to the evidence presented to the jury, or logical inferences therefrom).
 

 Our conclusion is bolstered by the fact that the State’s comments were made in direct response to the defendant’s closing argument that the defendant’s easily-traceable actions indicate a non-criminal motive or intent.
 
 See Stancle v. State,
 
 854 So.2d 228, 229 (Fla. 4th DCA 2003) (“A prosecutor’s argument should be examined in the context in which it is made.”). Thus, because the State’s rebuttal closing argument was both grounded in the evidence presented to the jury, and was made in direct response to a line of argument commenced by the defendant, we hold that the trial court acted within its discretion by allowing the prosecutor’s argument and denying the defendant’s subsequent motion for a mistrial.
 

 The Defendant’s Motion to Disqualify
 

 Prior to trial, the defendant moved to disqualify the Monroe County State Attorney’s Office, based on the fact that after Joseph Spataro discontinued his representation of the defendant, he became employed by the State. Ms. Vogel, Spataro’s immediate supervisor, was the prosecutor assigned to the instant case.
 

 At the hearing on the defendant’s motion to disqualify the Monroe County State Attorney’s Office, both Spataro and Vogel offered clear and uncontroverted testimony establishing that they never discussed the defendant’s case, no confidential information was exchanged, and Spataro did not see the file or assist in the prosecution of the case in any capacity. In addition, Spataro instructed his assistant at the State Attorney’s Office to screen him from all correspondence involving this case, and to keep it from his view. Finding that the defendant failed to demonstrate actual prejudice, and that Spataro (who was obviously disqualified) had been fully screened from his former client’s prosecution, the trial court denied the motion and allowed the case to proceed. The defendant now
 
 *1125
 
 argues that this denial amounts to reversible error.
 

 “[I]mputed disqualification of the entire state attorney’s office is unnecessary when the record establishes that the disqualified attorney has neither provided prejudicial information related to the pending criminal charge nor has personally assisted, in any capacity, in the prosecution of the charge.”
 
 State v. Fitzpatrick,
 
 464 So.2d 1185, 1188 (Fla.1985);
 
 see also Mackey v. State,
 
 548 So.2d 904, 905 (Fla. 1st DCA 1989) (finding that for the purposes of disqualification, a State Attorney’s Office is not comparable to a law firm). In response, the defendant argues that
 
 Popejoy v. State,
 
 597 So.2d 385 (Fla. 3d DCA 1992), is controlling. We disagree, as that case is clearly distinguishable.
 

 In
 
 Popejoy,
 
 the record established that the defendant’s former counsel communicated with the prosecutor and sat at the prosecution’s table during a hearing concerning the defendant.
 
 Id.
 
 at 335. Accordingly, this Court held that the disqualification of the entire State Attorney’s Office (in Monroe County) was appropriate.
 
 Id.
 
 at 336. In the instant case, however, the defendant was unable to offer any evidence suggesting that any inappropriate contact occurred between his former attorney and the prosecutor involved in the case. While Spataro’s “switching of sides” likely left the defendant with a regrettable sting, in the absence of actual prejudice, disqualification of the entire State Attorney’s Office was not required.
 
 See State v. Fields,
 
 954 So.2d 1218, 1220 (Fla. 3d DCA 2007) (holding that in the absence of actual prejudice, the disqualification of an entire State Attorney’s Office constitutes a departure from the essential requirements of law).
 

 Thus, the trial court correctly denied the-defendant’s motion to disqualify the entire Monroe County State Attorney’s Office.
 

 Conclusion
 

 The trial court acted within its discretion by limiting defense counsel’s cross-examination of Cole and permitting the prosecutor’s comments during the State’s rebuttal closing argument. We also find that because Spataro was, sufficiently screened, and the defendant did not demonstrate any actual prejudice, the trial court correctly denied the defendant’s motion to disqualify the entire Monroe County State Attorney’s Office. Accordingly, we affirm the defendant’s conviction and sentence.
 

 Affirmed.